UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAWN GALLASHAW, Administrator
and Personal Representative of
the Estate of Antonio Gallashaw,

                    Plaintiff,

v.                                          Case No. 3:20-cv-106-J-39MCR

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

                    Defendants.

_____

**ORDER**

**I. Status**

Plaintiff, Dawn Gallashaw, as personal representative of her son Antonio Gallashaw's estate, is proceeding on an amended complaint (Doc. 3; Compl.) against the Florida Department of Corrections (FDOC), the former warden of Baker Correctional Institution (BCI), three BCI corrections officers, and one medical staff person.[1] Before the Court are the following motions: (1) Officer Moody's motion to dismiss (Doc. 4; Moody Motion), to which Plaintiff has responded (Doc. 6; Moody Resp.);[2] (2) Officer Faltz's

_____

[1] One corrections officer and the medical staff person are identified as "John Does." See Compl. at 4. The Court has directed Plaintiff to identify the Doe Defendants by October 9, 2020, or they will be dismissed. See Order (Doc. 31).

[2] Defendant Moody filed a reply to Plaintiff's response (Doc. 8). However, he did not seek or receive leave to do so. See M.D. Fla. R. 3.01(c) ("No party shall file any reply or further

motion to dismiss (Doc. 7; Faltz Motion), to which Plaintiff has responded (Doc. 14; Faltz Resp.); and (3) former-warden Lee's motion to dismiss (Doc. 25; Lee Motion), to which Plaintiff has responded (Doc. 28; Lee Resp.).

## II. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. As such, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

memorandum directed to [a] motion or response . . . unless the Court grants leave."). As such, the Court does not consider Defendant Moody's reply.

statements." <u>Gill</u>, 2019 WL 5304078, at *2 (quoting <u>Iqbal</u>, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. In assessing the sufficiency of a complaint, all reasonable inferences should be drawn in favor of the plaintiff. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

### III. Complaint Allegations

Plaintiff proceeds on behalf of her son, Antonio, who died on July 28, 2015, while in BCI's custody. <u>See</u> Compl. ¶¶ 14, 23. Plaintiff alleges Defendant-officers Moody and Faltz entered Antonio's administrative confinement cell[3] on July 27, 2015 to conduct "a shake down." <u>Id.</u> ¶¶ 16-18. According to Plaintiff, when Moody and Faltz entered the cell, they "began to attack [Antonio] without cause . . . . rendering him unconscious." <u>Id.</u> ¶ 19. While a bit unclear, it appears Faltz initially attacked Antonio. Plaintiff alleges Moody knew of Faltz's intent to attack Antonio, but "did nothing to stop [it]." <u>Id.</u> ¶¶ 19, 55. Plaintiff also alleges Moody "participated in the unlawful violence." <u>Id.</u> ¶ 19.

Plaintiff alleges Moody and Faltz then removed Antonio from his cell while he was "unresponsive . . . and suffering from a life-threatening medical emergency." <u>Id.</u> ¶ 20. Plaintiff further

---

[3] Antonio had been in BCI's custody since January 2015. <u>See</u> Compl. ¶ 14. On the day of the incident, July 27, 2015, Antonio was placed in an administrative confinement cell because he reported a medical condition and, separately, reported a corrections officer was involved in illegal activity. <u>Id.</u> ¶ 17. Antonio was housed in the cell by himself. <u>Id.</u> ¶ 16.

alleges "neither Defendants FDOC, Lee, Moody, Faltz, Correctional Officer Doe[,] or Medical Staff Doe provided adequate medical attention or care to [Antonio]," who remained unresponsive. Id. ¶ 21. Plaintiff acknowledges Antonio eventually was transported to the Reception and Medical Center (RMC) but "transportation . . . was delayed." Id. ¶¶ 21, 22.

As relevant to the motions under review, Plaintiff asserts claims under Florida's wrongful death statute (count two) and under 42 U.S.C. § 1983 (counts three, four, and five).[4]

### IV. Analysis

#### A. Constitutional Claims Against Defendants Moody & Faltz

In counts three and four, Plaintiff asserts Defendants Moody's and Faltz's "use of force against [Antonio] . . . was excessive, unreasonable, and constituted cruel and unusual punishment in violation of the Eighth Amendment." Id. ¶¶ 56, 62. Plaintiff also alleges Defendants Moody and Faltz ignored or failed to properly care for Antonio's serious medical needs. Id. ¶¶ 57, 63. In count five, Plaintiff alleges Defendants Moody and Faltz were deliberately indifferent to Antonio's serious medical needs by failing to obtain immediate medical attention for him. Id. ¶¶ 68-69.

Defendants invoke qualified immunity. Defendant Moody asserts Plaintiff alleges only in a conclusory manner that Moody witnessed

---

[4] Count one is against the FDOC, who has not moved to dismiss the complaint. See FDOC's Answer (Doc. 26).

another officer attack Antonio but does not allege Moody himself engaged in the attack. See Moody Motion at 5. Defendant Faltz simply asserts Plaintiff does not allege facts showing he was "acting outside the scope of his employment." See Faltz Motion at 6.

An officer sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows officers to exercise their official duties without fear of facing personal liability. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id.

Upon asserting a qualified immunity defense, a defendant bears the initial burden to demonstrate he was acting in his discretionary authority at the relevant times. Dukes v. Deaton, 852 F.3d 1035, 1041-42 (11th Cir.), cert. denied, 138 S. Ct. 72 (2017). Plaintiff concedes Defendant Moody was acting within the scope of his discretionary authority at the relevant times. See Moody Resp. at 6. Plaintiff does not make the same concession as to Defendant Faltz. See Faltz Resp. at 8-12. However, in her complaint, Plaintiff alleges Defendant Faltz was working as a

corrections officer on July 27, 2015, and in that role, "conducted a 'shake down' of [Antonio's] cell." See Compl. ¶¶ 6, 18. Though Plaintiff does not define "shake down," this term generally is understood in the correctional environment to refer to a cell search, which is a legitimate job function of a corrections officer. Accordingly, Plaintiff alleges facts showing Defendant Faltz was acting within the scope of his discretionary authority at the relevant times.

The burden now shifts to Plaintiff to demonstrate she alleges Defendants engaged in conduct that, accepted as true, caused the violation of a clearly established constitutional right. Alcocer, 906 F.3d at 951. "Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." Id. (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)).

The Eighth Amendment's proscription against cruel and unusual punishment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987). See also Skrtich v. Thornton, 280 F.3d 1295, 1304 (11th Cir. 2002) ("The law of excessive force in this country is that a prisoner cannot be subjected to gratuitous or disproportionate force that has no object but to inflict pain."); Bruce v. Wade, 537 F.2d 850,

853 (5th Cir. 1976) ("That an unjustified beating at the hands of prison officials gives rise to a section 1983 action is clear.").

The Eighth Amendment proscribes not only gratuitous uses of force—as governed by the "malicious and sadistic" standard—but also conduct that threatens the health and safety of inmates—as governed by the deliberate indifference standard. See Danley v. Allen, 540 F.3d 1298, 1306 (11th Cir. 2008) (explaining the different types of Eighth Amendment claims a prisoner may pursue when he alleges a prison guard harmed him).

Thus, when an officer is aware an inmate faces a substantial risk of serious harm, he may not intentionally ignore that risk by conduct that is more than negligence. See Farmer v. Brennan, 511 U.S. 825, 843 (1994). "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" Id. (quoting Helling v. McKinney, 509 U.S. 25, 35 (1993)). See also McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) ("We have repeatedly found that 'an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.'").

When an officer uses excessive force against an inmate, officers who are present and in a position to intervene can be liable if they do not. Velazquez v. City of Hialeah, 484 F.3d 1340,

1341 (11th Cir. 2007) ("The law of this circuit is that an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." (internal quotation marks omitted)).

Because Defendants Moody and Faltz each raise a qualified-immunity defense, the Court addresses Plaintiff's allegations and claims against them individually.

### i. Excessive Force & Failure to Intervene

Plaintiff alleges Defendant Faltz physically beat Antonio to the point of unconsciousness "without cause." See Compl. ¶¶ 19, 56, 62. Accepting these allegations as true, Plaintiff asserts the violation of a clearly established constitutional right under an excessive-force theory, and Defendant Faltz is not entitled to qualified immunity on this claim. See Skrtich, 280 F.3d at 1304. It is unclear, however, in which count—three or four—Plaintiff proceeds on an excessive-force theory against Defendant Faltz. Confusingly, in both counts, Plaintiff repeats the same basic allegations (e.g., "use of force"; "beating"; "serious need for medical attention") and references the same overarching legal principles (e.g., "cruel and unusual punishment"; "Eighth Amendment"; "excessive [force]"; "deliberate disregard of [Antonio's] Constitutional rights"). See Compl. ¶¶ 54-58, 62-65. To the extent Plaintiff intended to set forth multiple, independent theories of liability against Defendant Faltz, she has not clearly

done so. The excessive force claim may proceed, but to the extent Plaintiff intends to pursue other theories of liability against Defendant Faltz, Plaintiff will be permitted an opportunity to amend her complaint, as addressed later in this Order.

Plaintiff's claims against Defendant Moody also suffer from a lack of precision and clarity. In both counts three and four, Plaintiff seemingly asserts an excessive force claim against Defendant Moody. However, it does not appear Defendant Moody himself struck Antonio despite Plaintiff's contention that "Defendant Moody participated in the unlawful violence," and "Defendants Moody and Faltz attacked and beat [Antonio]." See Compl. ¶¶ 19, 53, 61 (emphasis added). Id. Elsewhere in her complaint, Plaintiff stresses that Defendant Moody merely "was present" during the attack and failed to intervene, suggesting his "participation" was limited to a passive role. Id. ¶ 55.

Additionally, Plaintiff describes Defendant Faltz's physical stature (height and weight), likely to show Defendant Faltz, as the aggressor, was larger and stronger than Antonio, thus permitting the inference the use of physical force was unnecessary. Id. ¶ 19. Plaintiff does not similarly describe Defendant Moody's physical stature, presumably because Defendant Moody did not engage in the alleged beating. Finally, in response to Defendant Moody's motion, Plaintiff explains, "Defendant Moody participated in the unlawful violence upon [Antonio] by Defendant Faltz. . . . [by] moving an unresponsive [Antonio] from the Cell, who was

clearly suffering a medical emergency." <u>See</u> Moody Resp. at 9.

Upon review, it appears Plaintiff alleges Defendant Moody's participation was limited to watching Defendant Faltz attack Antonio knowing the attack was going to occur and assisting Defendant Faltz after the fact. <u>See</u> Compl. ¶¶ 19, 55. Accepting these allegations as true, Plaintiff does not state an excessive force claim against Defendant Moody, but she does state a claim under a failure-to-intervene theory. As with her claims against Defendant Faltz, however, Plaintiff does not clearly articulate the Eighth Amendment theory under which she proceeds against Defendant Moody, nor is it apparent the distinction between counts three and four.

### ii. Deliberate Indifference

In counts three, four, and five, Plaintiff alleges both Defendants Moody and Faltz "failed to properly care for [Antonio's] serious need for medical attention" (count three); "ignored [Antonio's] serious need for medical attention and deliberately prevented [Antonio] from receiving proper medical care" (count four); and was deliberately indifferent to Antonio's serious medical needs (count five). <u>Id.</u> ¶¶ 57, 63, 69.

Not only are the claims duplicative as stated, but Plaintiff offers no facts explaining how Defendants Moody and Faltz were deliberately indifferent to Antonio's serious medical needs. Legal conclusions unsupported by factual explanation do not satisfy the minimal pleading standard. Even more, Plaintiff acknowledges

Antonio was transported to RMC in the afternoon on July 27, 2015, where he received medical attention. Id. ¶ 22. Plaintiff vaguely asserts the transportation to RMC was delayed, id. ¶ 21, though she does not explain who was responsible for or what caused the delay.

To the extent Plaintiff suggests Defendants Moody and Faltz were deliberately indifferent to Antonio's serious medical needs by removing him from his cell, id. ¶ 20, the allegations as stated do not permit such an inference. In fact, it appears Defendants Moody and Faltz removed Antonio from his cell to take him to the medical unit where transportation to RMC was arranged. Id. ¶ 21. Even if Defendants Moody and Faltz should have summoned medical staff to Antonio's cell instead of moving him themselves, such conduct suggests poor judgment or negligence, not deliberate indifference. Accordingly, Plaintiff fails to state a plausible claim for relief against Defendants Moody and Faltz under a deliberate-indifference-to-serious-medical-needs theory.

Finally, construing the facts in the light most favorable to Plaintiff, she states a claim against Defendant Moody for deliberate indifference to Antonio's safety. "A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015). See also Farmer, 511 U.S. at 837 (defining "deliberate indifference" as the intentional

disregard of a known, excessive risk to an inmate's safety).

Plaintiff alleges Defendant Moody "was aware of Defendant Faltz's intentions to injure [Antonio] when they entered the Cell." See Compl. ¶ 55. Accepting as true that Defendant Moody knew of Defendant Faltz's alleged sinister intentions but took no steps to alleviate the risk Antonio faced, Plaintiff states a deliberate indifference claim against Defendant Moody.

## B. Wrongful Death Claim Against Defendants Moody & Faltz

In count two, Plaintiff alleges Antonio died "as a result of a wrongful and unjustified attack by Defendants Moody and Faltz." Id. ¶¶ 47-50. Defendants argue they are immune from suit under Florida's sovereign immunity statute because Plaintiff does not allege facts showing they acted maliciously or in bad faith. See Moody Motion at 7; Faltz Motion at 4.

Florida Statutes section 768.28(9)(a) provides an officer is entitled to immunity for injuries caused while performing actions within the scope of his employment "unless such officer . . . acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a) (West).

Florida courts equate the intent standard under the sovereign immunity statute with "recklessness." See, e.g., Williams v. City of Minneola, 619 So. 2d 983, 986 (Fla. Dist. Ct. App. 1993). In the civil rights context, the Supreme Court has equated "deliberate indifference" with "recklessness." Farmer, 511 U.S. at 836

12

("[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.").

Plaintiff alleges facts that, accepted as true, permit the reasonable inference Defendants Moody and Faltz acted with the requisite intent. If true that Defendant Faltz intended to attack Antonio and then beat Antonio without cause and until Antonio lost consciousness, a reasonable person could construe such conduct as malicious, reckless, or done with a willful and wanton disregard of human rights or safety. See, e.g., Gregory v. Miami-Dade Cty., Fla., 719 F. App'x 859, 874 (11th Cir. 2017) (holding the plaintiff alleged the defendant-officer engaged in conduct "more reprehensible and unacceptable than mere intentional conduct" when he alleged the officer shot a teenager six times in the back and the teenager was not resisting or threatening the officer).

Similarly, accepting as true that Defendant Moody knew Defendant Faltz intended to attack Antonio for no reason and stood by while the attack occurred, a reasonable person could conclude he did so with the requisite intent under section 768.28(9)(a). Accordingly, at this stage, the Court is not prepared to find as a matter of law that Defendants Moody and Faltz are immune from suit under Florida's sovereign immunity statute.

### C. Constitutional Claims Against Defendant Lee

Plaintiff alleges Defendant Lee was deliberately indifferent to the needs of inmates by failing to train officers "how to

13

prevent [] acts of violence" (count four) and to Antonio's serious medical needs (count five). See Compl. ¶¶ 64, 68-69.

Defendant Lee invokes qualified immunity. As to count four, Defendant Lee argues Plaintiff fails to allege facts showing a causal connection between the alleged injury and his acts or omissions as a supervisor. See Lee Motion at 14. As to count five, Defendant Lee argues Plaintiff does not allege he participated in the alleged conduct (a denial of medical care) or enacted a policy that resulted in a constitutional violation. Id. at 14-15.

In response, Plaintiff argues Defendant Lee "was not acting within his discretionary authority." See Lee Resp. at 12-13. An officer is said to be acting within his discretionary authority if he was engaged in acts that broadly fall within his job responsibilities. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004). Thus, the question is not whether an officer had the authority, within the scope of his job, to violate an inmate's constitutional rights. Id. Rather, a court must consider whether an officer was engaged in conduct that, if done properly, was a legitimate job-related function. This question requires the court to "temporarily put[] aside the fact that [the officer's act] may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Id.

Plaintiff alleges Defendant Lee was the warden of BCI "at all

14

relevant times." See Compl. ¶ 4. Plaintiff names Defendant Lee as a party to the action solely because of his role as warden, which necessarily implies he is sued because of how he carried out his job. If Defendant Lee permitted unconstitutional practices or policies to exist, as Plaintiff alleges, he was able to do so because of the role he enjoyed. As such, Defendant Lee was acting within the scope of his discretionary authority for purposes of the qualified immunity analysis. The burden now shifts to Plaintiff to establish she alleges facts permitting the inference that Defendant Lee violated a clearly established constitutional right.

Plaintiff does not contend Defendant Lee directly participated in any of the alleged unconstitutional acts. For instance, Plaintiff does not allege Defendant Lee was present during or even knew about the alleged use of force against Antonio on July 27, 2015. Nor does Plaintiff allege Defendant Lee knew Antonio required urgent medical attention but failed or refused to provide it in a timely manner.

To the extent Plaintiff seeks to hold Defendant Lee liable for the actions of the other Defendants, such a theory of liability is not viable under § 1983. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted), abrogated in part on other grounds by Randall

v. Scott, 610 F.3d 701 (11th Cir. 2010).

"The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Id. (alteration in original). Supervisor liability arises only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotation marks and citation omitted).

> The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Alternatively, the causal connection may be established when a supervisor's "custom or policy ... result[s] in deliberate indifference to constitutional rights" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

Cottone, 326 F.3d at 1360 (internal citations omitted).

When a claim against a supervisor is premised on a supervisor's knowledge of prior constitutional deprivations, the plaintiff must allege those prior deprivations were "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). A supervisor's failure to train employees may constitute an

16

unconstitutional policy or custom, but a plaintiff must allege
"the failure to train amounts to deliberate indifference to the
rights of persons with whom the [officers] come into contact." See
Keith v. DeKalb Cty., Georgia, 749 F.3d 1034, 1053 (11th Cir. 2014)
(alteration in original). Under a failure-to-train theory, a
plaintiff ordinarily must establish the alleged training
deficiency resulted in "[a] pattern of similar constitutional
violations." Id. (alteration in original) (quoting Connick v.
Thompson, 563 U.S. 51, 62 (2011)).

Plaintiff alleges Defendant Lee enacted policies or practices
with deliberate indifference "to the serious needs of jail inmates
. . . by allowing corrections officers to physically abuse
inmates." See Compl. ¶ 64. Plaintiff also alleges Defendant Lee
failed to train officers how to avoid or respond to instances of
violence or abuse toward inmates. Id. Plaintiff asserts,
"Defendants [including Lee] cooperated in a policy to permit,
facilitate, ratify and condone, correctional officer-on-inmate
assaults and batteries and were deliberately indifferent to known
risks of the life, health and safety of the inmates." Id. ¶ 34,
35.

Plaintiff offers no facts to support these conclusory
assertions, however. Instead, she cites data representing the
number of male-inmate homicides that have occurred each year from
2011 through 2015 at corrections institutions throughout Florida.
Id. ¶¶ 28-33. Accepting as true that male inmates have been killed

17

at the numerous corrections institutions in Florida between 2011 and 2015, such facts do not permit the reasonable inference that Defendant Lee was on notice of a widespread history of abuse or a deficiency in a training program at BCI. Indeed, Plaintiff does not assert any of the male-inmate homicides were caused by corrections officers at BCI.

Plaintiff's vague and conclusory reference to prior officer-on-inmate assaults, with no factual detail, is insufficient to satisfy the rigorous standard for supervisor liability under § 1983. Notably, Plaintiff offers no examples of prior use-of-force incidents having occurred at BCI that would have put Defendant Lee on notice of a potential issue, much less one that can be described as obvious, flagrant, or rampant, or that was attributable to a deficiency in a training program. Accordingly, Plaintiff fails to state a plausible claim for relief against Defendant Lee in count four.

In count five, Plaintiff alleges Defendant Lee was deliberately indifferent to Antonio's serious medical needs. Again, however, Plaintiff alleges no facts showing a causal connection between Defendant Lee's acts or omissions and the alleged constitutional violation. For instance, Plaintiff does not allege Defendant Lee maintained or adopted a policy of delaying medical care for inmates harmed by officers. And Plaintiff does not allege Defendant Lee was aware of a widespread history of abuse against inmates with respect to the provision of medical services.

18

As such, Plaintiff fails to state a plausible claim for relief against Defendant Lee in count five.

In sum, Plaintiff alleges no facts demonstrating Defendant Lee personally participated in the alleged constitutional violations, nor does she allege facts otherwise demonstrating the requisite causal connection. Plaintiff's conclusory assertions do not suffice. Accordingly, Defendant Lee's motion is due to be granted as to counts four and five. See Tani v. Shelby Cty., Ala., 511 F. App'x 854, 857 (11th Cir. 2013) (affirming dismissal of a complaint that alleged, as labels and conclusions, violations of various constitutional rights with no supporting facts to "explain what actions caused which violations").

### D. Wrongful Death Claim Against Defendant Lee

Plaintiff names Defendant Lee in count two for the wrongful death of Antonio. See Compl. ¶¶ 48-50. Defendant Lee contends Plaintiff fails to state a claim against him to the extent the claim is premised on negligent supervision of Defendants Moody and Faltz. See Lee Motion at 4-5. Defendant Lee also argues he is entitled to sovereign immunity. Id. at 5.

To state a claim under Florida's wrongful death statute, a plaintiff must allege the defendant's "wrongful act, negligence, default, or breach of contract" caused the death of a person. See Fla. Stat. § 768.19 (West). Plaintiff alleges Antonio "died as a result of a wrongful and unjustified attack by Defendants Moody and Faltz and the wrongful acts of the other Defendants, including

19

Defendant Lee for improper supervision of [BCI] and its employees." See Compl. ¶¶ 48, 49.

Plaintiff offers no facts to support her conclusory assertion that Defendant Lee engaged in "wrongful acts" that caused Antonio's death. Plaintiff does not allege Defendant Lee participated in the alleged attack against Antonio that caused his death, nor does Plaintiff allege facts permitting the reasonable inference Defendant Lee failed to supervise officers known to be unfit. To the extent Defendant Lee improperly supervised or trained BCI employees, such an allegation, without more, does not permit the reasonable inference that Defendant Lee contributed to the death of Antonio.[5] Plaintiff also fails to allege Defendant Lee committed "wrongful acts" with the requisite intent to overcome sovereign immunity.

### E. Conclusion

Defendant Moody's and Faltz's motions are due to be denied in part to the extent they invoke qualified immunity as to the following claims: excessive force against Defendant Faltz and

---

[5] In her response, Plaintiff contends the complaint "sets forth facts regarding Defendant Lee's role in the negligent implementation and operation of training corrections officers at [BCI], and that this is what led to the death of [Antonio]." See Pl. Lee Resp. at 7. Plaintiff may have intended to include such factual allegations in her complaint, though she does not. Even if true that "Defendants cooperated in a policy to permit, facilitate, ratify and condone, correctional officer-on-inmate assaults and batteries," see Compl. ¶ 34, such an assertion does not necessarily imply Defendant Lee implemented a training program in such a way as to cause the death of Antonio under the circumstances Plaintiff describes.

failure to intervene and deliberate indifference against Defendant Moody. Their motions are also due to be denied as to the wrongful death claim (count two). Their motions are due to granted in part to the extent Plaintiff fails to adequately set forth the following claims: excessive force against Defendant Moody and deliberate indifference to serious medical needs against both Moody and Faltz.

Defendant Lee's motion is due to be granted because Plaintiff fails to state a plausible claim for relief against Defendant Lee. Plaintiff requests leave to amend her complaint. See Lee Resp. at 14. See also Moody Resp. at 10; Faltz Resp. at 12. Accordingly, the Court will dismiss the claims against Defendant Lee without prejudice subject to Plaintiff's right to amend her complaint. See Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002).

Additionally, given the confusing and duplicative nature of the claims against Defendants Moody and Faltz in counts three, four, and five, Plaintiff shall amend those claims. In particular, Plaintiff must clarify which Eighth Amendment theories of liability she pursues against Defendants Moody and Faltz and the factual allegations supporting each theory, and she must eliminate the redundancy of her claims and allegations.

Accordingly, it is now

**ORDERED:**

1.   Defendant Moody's motion to dismiss (Doc. 4) is **denied in part** and **granted in part** to the extent stated herein.

21

2.    Defendant Faltz's motion to dismiss (Doc. 7) is **denied in part** and **granted in part** to the extent stated herein.

3.    Defendant Lee's motion to dismiss (Doc. 25) is **granted,** and Plaintiff's claims against Defendant Lee are **dismissed without prejudice** subject to Plaintiff's right to amend her complaint.

4.    Plaintiff shall submit an amended complaint in compliance with this Order within **twenty-one days** of the date of this Order. Plaintiff's failure to properly set forth her claims against any Defendant may result in the dismissal of those claims.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of September 2020.

_____

BRIAN J. DAVIS
United States District Judge


Jax-6
c:
Counsel of Record

22