UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAWN GALLASHAW, Administrator
and Personal Representative of
the Estate of Antonio Gallashaw,

                    Plaintiff,

v.                                                      Case No. 3:20-cv-106-BJD-MCR

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

                    Defendants.

_____

## **ORDER**

### **I. Status & Procedural History**

Plaintiff, Dawn Gallashaw, as personal representative of her son Antonio

Gallashaw's estate, is proceeding on a second amended complaint (Doc. 37; Am.

Compl.) against the Florida Department of Corrections (FDOC); the former

warden of Baker Correctional Institution (BCI), James Lee; and two BCI

corrections officers, Kevin Faltz and William Moody. See Am. Compl. ¶¶ 3-6.

Plaintiff alleges Defendants' actions or omissions caused her son's death on

July 28, 2015. Id. ¶¶ 21, 42, 47-48, 59, 65, 73. Before the Court are Defendant

Faltz's motion to dismiss (Doc. 39; Faltz Motion) and Defendant Lee's motion

to dismiss (Doc. 42; Lee Motion). Plaintiff has responded to Defendant Faltz's

motion (Doc. 44; Pl. Faltz Resp.) and to Defendant Lee's motion (Doc. 45; Pl.

Lee Resp.). Defendants Moody and the FDOC answered the operative pleading (Docs. 40, 41).

As background, Defendants Faltz and Lee moved to dismiss the claims against them as stated in the first amended complaint. The Court granted their motions (in part as to Faltz) but permitted Plaintiff an opportunity to amend (Doc. 32; MTD Order). In ruling on those motions, the Court found in relevant part that Plaintiff stated an excessive force claim against Defendant Faltz (though did not clearly indicate under which count such a claim proceeded) but did not state a deliberate indifference claim against him for an alleged failure to provide medical care; Defendant Faltz was not entitled to sovereign immunity; and Plaintiff failed to state a plausible claim against Defendant Lee. See MTD Order at 8-9, 11, 13, 19, 20-21.

## II. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff should allege enough

2

facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. As such, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Gill as Next Friend of K.C.R. v. Judd, 941 F.3d 504, 511 (11th Cir. 2019) (quoting Iqbal, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. In assessing the sufficiency of a complaint, all reasonable inferences should be drawn in favor of the plaintiff. See Iqbal, 556 U.S. at 678.

### III. Defendant Faltz's Motion

Defendant Faltz seeks dismissal under rules 7, 8, 10, and 12(b)(6) of the Federal Rules of Civil Procedure, arguing he is entitled to sovereign immunity on the state-law claim (wrongful death), he is entitled to qualified immunity on the constitutional claims (excessive force and deliberate indifference), and Plaintiff has not separated each count making it "unclear what Plaintiff is alleging." See Faltz Motion at 1, 4, 6, 8. In opposition, Plaintiff notes the Court

previously found Defendant Faltz was not entitled to sovereign immunity on the state-law claim, and she points to factual allegations she contends go beyond a "threadbare" recital of the elements of a cause of action as to all claims. See Pl. Faltz Resp. at 5 n.2, 6, 11-12.

For the reasons stated in the Court's order on Faltz's first motion to dismiss, the Court finds Plaintiff asserts facts that, accepted as true, permit the reasonable inference Defendant Faltz acted with the requisite state of mind to overcome a sovereign immunity defense, and she states a plausible claim against Defendant Faltz for excessive force. See MTD Order at 8, 9.[1] Additionally, Plaintiff includes new allegations that, accepted as true, permit the reasonable inference Defendant Faltz was deliberately indifferent to Mr. Gallashaw's serious medical needs: Defendant Faltz attacked Mr. Gallashaw without cause; along with others, dragged an unresponsive Mr. Gallashaw from his cell; and held Mr. Gallashaw face-down in the hallway for approximately ten minutes without calling for medical assistance, despite that Mr. Gallashaw had "either ceased breathing or continued to be unable to breathe from the beating." See Am. Compl. ¶¶ 16-19.

---

[1] Plaintiff now clarifies under which count she raises the excessive force claim—count three. See Am. Compl. ¶¶ 51-59.

4

For these reasons and those stated in the Court's prior order (Doc. 32), Defendant Faltz is not entitled to sovereign immunity on the state-law claim, and Plaintiff points to facts showing Defendant Faltz is not entitled to qualified immunity at this juncture on the constitutional claims. Accordingly, Defendant Faltz's motion is due to be denied.

## IV. Defendant Lee's Motion

Defendant Lee argues Plaintiff again fails to state a plausible claim against him under both state law (wrongful death) and 42 U.S.C. § 1983 (deliberate indifference), because her allegations in the second amended complaint are essentially the same as those raised in the former pleading. See Lee Motion at 4, 9, 13. Additionally, Defendant Lee invokes qualified and sovereign immunities. Id. at 7, 15.

## A. Qualified Immunity

An officer sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows officers to exercise their official duties without fear of facing personal liability. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine

protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id.

Upon asserting a qualified immunity defense, a defendant bears the initial burden to demonstrate he was acting in his discretionary authority at the relevant times. Dukes v. Deaton, 852 F.3d 1035, 1041-42 (11th Cir.). As she did previously (Doc. 28), Plaintiff argues Defendant Lee was "not acting within his discretionary authority when he violated [Mr. Gallashaw's] [c]onstitutional rights." See Pl. Lee Resp. at 15. For the reasons stated in the Court's prior order, this argument is not persuasive. See MTD Order at 14-15. Accordingly, the burden now shifts to Plaintiff to demonstrate she alleges Defendant Lee engaged in conduct that, accepted as true, caused the violation of a clearly established constitutional right. Alcocer, 906 F.3d at 951.

A comparison of the operative and former pleadings shows Plaintiff's allegations against Defendant Lee remain mostly unchanged. The deliberate indifference claim against Defendant Lee (count four), which the Court found insufficient in the former pleading, includes few new factual allegations: "Defendant Lee's job position as Warden of [BCI] required that Defendant Lee ensure the training of correction officers"; and "Defendant Lee failed to train officers . . . so as to prevent attacks on inmates such as [Mr. Gallashaw] or created a custom at [BCI] where such failure to prevent attacks on an inmate

would be tolerated." See Am. Compl. ¶ 64. As she did in the former pleading,

Plaintiff incorporates by reference the following allegations:

> Prior to this incident involving [Mr. Gallashaw], Defendants cooperated in a policy to permit, facilitate, ratify, and condone, correctional officer-on-inmate assaults and batteries and were deliberately indifferent to known risks of the life, health and safety of the inmates.

> Prior to this incident involving [Mr. Gallashaw], Defendants cooperated in a policy to permit, facilitate, ratify, and condone excessive use of force on inmates and were deliberately indifferent to known risks of the life, health and safety of the inmates.

> Prior to the July 27, 2015, incident complained of herein, Defendants cooperated in a policy to permit, facilitate, ratify, and condone the concealing or covering up of suspicious circumstances surrounding inmate deaths.

Id. ¶¶ 33-35. Additionally, Plaintiff continues to rely upon unexplained

statistics of male-inmate homicides at FDOC institutions between 2011 and

2015 to establish a causal connection between Defendant Lee's conduct and

Mr. Gallashaw's death. Id. ¶¶ 22, 27-32.[2] She also incorporates into count four

---

[2] In its prior order, the Court explained the male inmate homicide numbers were not factually connected to Defendant Lee's conduct as warden of BCI: "Accepting as true that male inmates have been killed at the numerous corrections institutions in Florida between 2011 and 2015, such facts do not permit the reasonable inference that Defendant Lee was on notice of a widespread history of abuse or a deficiency in a training program at BCI. Indeed, Plaintiff does not assert any of the male-inmate homicides were caused by corrections officers at BCI." See MTD Order at 17-18.

one new allegation: that another inmate died at BCI two days after Mr. Gallashaw died and the inmate's death was investigated as suspicious. Id. ¶ 23.

Plaintiff's new allegations do not change the Court's original analysis. Plaintiff pursues a claim against Defendant Lee primarily because he was the warden of BCI at the relevant times. Such a theory of liability is not plausible under § 1983: "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).

Liability under § 1983 requires an affirmative causal connection between a defendant's actions and a constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). While a supervisor's failure to train or supervise may evidence deliberate indifference to a prisoner's constitutional rights, a plaintiff must allege the supervisor "knew of a need to train and/or supervise in a particular area and the [supervisor] made a deliberate choice not to take any action." See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). For instance, a supervisor may be considered on notice of a need to

8

train or supervise if the supervisor knows of a confirmed history of widespread abuse. Id. at 1351 (citing cases).

As in her former pleading, Plaintiff's allegations against Defendant Lee are conclusory. Aside from using certain buzzwords, such as "policy," "custom," "ratify," "condone," and similar terms, Plaintiff offers no facts permitting the reasonable inference Defendant Lee, in his role as warden of BCI, knew of a need to train or supervise officers "in a particular area." See id. at 1350. In other words, the causal link is missing. Plaintiff's reference to the number of inmate deaths at FDOC institutions (84) over a fourteen-year period does not suffice. Cf. id. (holding that data showing prosecutors dismissed a high percentage of disorderly conduct arrests did not establish the arresting officers did something wrong). See also Church v. City of Huntsville, 30 F.3d 1332, 1346 (11th Cir. 1994) (holding a finding of a city-commissioned demographic study that police officers regularly "rousted" homeless people did not permit the inference that the city had a custom or policy of unconstitutionally removing homeless people from the city).

The limited data Plaintiff references requires an inferential leap to conclude Defendant Lee knew there was a training deficiency or a need for better supervision in a particular area. For instance, Plaintiff does not allege any of the prior homicides involved circumstances similar to those involved

here, which Plaintiff describes as "unauthorized cell inspections or cell checks." See Am. Compl. ¶ 26. In fact, Plaintiff does not even allege the 84 homicides were caused by or involved corrections officers at BCI who entered inmates' cells without reason or who did not understand the "constitutional limitations on the use of force against inmates." Id.

Even if some of the 84 inmate homicides Plaintiff references occurred at BCI when Defendant Lee was warden, there are no facts that would permit the reasonable inference those homicides could have been avoided with better supervision or training of corrections officers as it relates to entering inmates' cells or using force against inmates. Cf. Dickinson v. Cochran, 833 F. App'x 268, 269-70, 272 (11th Cir. 2020) (holding the plaintiff stated a plausible claim against the warden where he alleged a 2003 Department of Justice investigation put the warden on notice of "a problem with inmate-on-inmate violence," yet the warden failed to implement the department's recommendations to resolve the problems).

In short, Plaintiff offers no facts showing a connection between past inmate homicides at BCI and Defendant Lee's conduct as warden of that institution. Assuming Defendants Faltz and Moody violated Mr. Gallashaw's constitutional rights on July 27, 2015, Plaintiff does not allege Defendant Lee was aware of a single instance of a prior, similar constitutional violation

having occurred at BCI when he was warden. And Plaintiff does not allege Defendant Lee authorized or instructed Defendants Moody and Faltz to use force against Mr. Gallashaw on July 27, 2015. That an inmate died at BCI two days after Mr. Gallashaw died fails to provide the requisite causal connection.

Plaintiff's speculative allegations do not satisfy the plausibility standard under federal pleading rules. See Iqbal, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" (internal quotation marks omitted)). Inmate homicides having occurred at FDOC institutions under unexplained circumstances only possibly suggests the deaths were attributable to a lack of supervision or training. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" Id. at 679 (quoting with alteration Fed. R. Civ. P. 8(a)(2)). For these reasons, Plaintiff fails to state a plausible deliberate indifference claim against Defendant Lee in count four.

Plaintiff also fails to state a plausible claim against Defendant Lee in count five—deliberate indifference to serious medical needs—to the extent she relies on the same conclusory allegations as those supporting count four. Plaintiff does not allege Defendant Lee participated in, authorized, or observed

11

the use-of-force against Mr. Gallashaw on July 27, 2015. In an attempt to show Defendant Lee personally participated in a constitutional violation, Plaintiff alleges in her second amended complaint as follows: "Following the removal of [Mr. Gallashaw] from the Cell, upon information and belief, Defendant Lee was notified of the situation involving [Mr. Gallashaw] and his unresponsiveness while it was occurring." See Am. Compl. ¶ 70. Plaintiff further alleges Defendant Lee did not immediately call emergency services so Mr. Gallashaw could be treated by medical providers outside of BCI. Id. ¶ 72.

Though Plaintiff directly references Defendant Lee in these averments, they amount to little more than a restatement of the elements of a deliberate indifference cause of action. Read in context of all allegations, these assertions do not suggest more than a possibility of misconduct by Defendant Lee. Plaintiff does not allege Defendant Lee was present or even nearby when Defendants Moody and Faltz entered Mr. Gallashaw's cell, beat him, and dragged him to the hallway. Additionally, Plaintiff does not offer any facts permitting the reasonable inference Defendant Lee knew Mr. Gallashaw required "transportation . . . to an appropriate medical facility" outside of BCI or directed Defendants Moody and Faltz to harm Mr. Gallashaw and deny him immediate medical treatment. Id. ¶ 71.

Even accepting as true someone notified the warden—a non-medical administrator—that an inmate was unresponsive "while [an incident] was occurring," the warden's failure to appreciate from afar that the inmate required emergency treatment at an outside facility suggests at most negligence. <u>Farmer v. Brennan</u>, 511 U.S. 825, 838 (1994) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."). Plaintiff does not allege facts showing Defendant Lee ordered Defendants Moody and Faltz (or anyone else) not to summon help for an inmate Defendant Lee knew was in obvious need of such. For these reasons, Plaintiff fails to demonstrate she states a plausible constitutional claim against Defendant Lee, and he is entitled to qualified immunity.

## B. Sovereign Immunity

Defendant Lee invokes sovereign immunity under Florida Statutes section 768.28(9)(a). <u>See</u> Lee Motion at 9. Plaintiff counters that the second amended complaint sufficiently alleges Defendant Lee engaged in "'bad faith' in the implementation and operation of the training of correction officers at [BCI]." <u>See</u> Pl. Lee Resp. at 9. Florida's sovereign immunity statute grants immunity to state employees for tort actions unless they "acted in bad faith or

with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." <u>See</u> Fla. Stat. § 768.28(9)(a).

Courts generally equate the deliberate indifference standard with "recklessness," or a "wanton infliction of pain." <u>See, e.g.</u>, <u>Farmer</u>, 511 U.S. at 836 ("It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'"); <u>Williams v. City of Minneola</u>, 619 So. 2d 983, 987 (Fla. Dist. Ct. App. 1993) (holding a finding of recklessness could also support a finding of "willful and wanton conduct under section 768.28(9)"). <u>See also</u> <u>Valdes v. Crosby</u>, 390 F. Supp. 2d 1084, 1108 (M.D. Fla. 2005), <u>aff'd</u>, 450 F.3d 1231 (11th Cir. 2006) (noting the standard to overcome Florida's sovereign immunity "is at least as high as the standard needed to prove" an officer or agent of the state was deliberately indifferent to an inmate's health or safety under § 1983).

Because the Court finds Plaintiff fails to state a plausible deliberate indifference claim against Defendant Lee, it follows that she fails to allege Defendant Lee "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

14

See Fla. Stat. § 768.28(9)(a). As such, Defendant Lee is entitled to sovereign immunity, and the state-law claim against him is due to be dismissed.

Accordingly, it is now

**ORDERED:**

1.      Defendant Faltz's motion to dismiss (Doc. 39) is **DENIED**. Defendant Faltz shall answer the second amended complaint (Doc. 37) within **twenty days** of the date of this Order.

2.      Defendant Lee's motion to dismiss (Doc. 42) is **GRANTED**, and Plaintiff's claims against Defendant Lee are **dismissed with prejudice**.

3.      The **Clerk** shall terminate Defendant Lee as a party to this action.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of June 2021.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Counsel of Record